IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JAMES I. BURLESON, et al,

      Plaintiffs,

v.                                                                  No.   07-2151-JPM-cgc

UNITED STATES OF AMERICA,

      Defendant.

**REPORT AND RECOMMENDATION ON MOTION TO EXCLUDE EVIDENCE AND TESTIMONY OF DEFENDANT'S EXPERT SURVEYOR**

Before the court is Plaintiffs' June 24, 2009, Motion to Exclude Defendant's Expert Surveyor, Walter Bennett[1], and his survey pursuant to Fed. R. Evid. 702 (D.E. # 48) by way of Order of Reference for report and recommendation from Chief Judge Jon P. McCalla (D.E.# 49). After considering the motion, response of the Defendant and oral argument,[2] it is recommended that Mr. Bennett's methodology is sufficiently reliable such that his testimony and report should not be excluded.   Further, the case is set for a bench trial, a setting in which the dangers that would accompany a potentially unreliable expert witness are not implicated.

The case at bar is a boundary dispute.  At one time, the property on either side of the disputed boundary line was owned by A. Lea & Co.  Plaintiffs' Memorandum, p 2.  In 1901,

---

[1] Plaintiffs' Motion refers to the surveyor as "William Bennett" however, Mr. Bennett's report attached as Exhibit 2 to Defendant's response shows his name to be Walter D. Bennett.
[2] A hearing on the motion was held on September 18, 2009.   A formal *Daubert* evidentiary hearing was not held because the parties had very thoroughly briefed the *Daubert* issues and provided extensive exhibits (including deposition excerpts) upon which to base this Report and Recommendation.   *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 248-9 (6th Cir. 2001).

there was a partition of the Lea property which established the disputed boundary line and created the Rice Tract and the Bacon Tract. *Id.* at 3.  In 1941, a portion of the Bacon Tract was sold to Elvy and Lena Rorie creating the Rorie Tract. *Id.*  In 1993, Defendant acquired the Rice Tract. Defendant's Response, p 1.

Plaintiffs purchased what was the Rorie tract in August and November 2002. Am. Complaint ¶ 4.  Plaintiffs' property is bounded to the north by lands owned by the Defendant. Am. Complaint ¶2.   At the time that Plaintiffs purchased the Rorie tract, Defendant had placed "Blue Goose" / no trespassing signs along a fence line which Plaintiffs recognized as the north boundary of their property.  Am. Complaint ¶¶ 15, 16.  After acquiring the land, Plaintiffs constructed two wells and placed an eight-inch well head, pump and pipe on what they believed to be their property. Am. Complaint ¶ 17.   On November 18, 2004, Defendant seized Plaintiffs' well and well equipment and asserted that Defendant owned the land where the well was located. Am. Complaint ¶ 20.  Defendant's actions were based on a survey prepared by Walter D. Bennett on August 25, 2004.   Am. Complaint ¶ ¶ 20, 21; Answer ¶¶ 20, 21.

Plaintiffs seek to exclude Mr. Bennett's survey and testimony pursuant to Fed. R. Evid. 702, arguing that Mr. Bennett's methodology fails to apply reliable principles and methods.    The rule provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that district courts must act as "gatekeepers" to protect juries from

2

misleading or unreliable expert testimony by assessing the reliability of the expert's principles and methodologies used to reach the expert opinion or conclusion. *Daubert*, 509 U.S. at 589, 592-93,.

Mr. Bennett's deposition testimony provides the following information regarding his experience, training and education:  he has worked as a surveyor since 1966, Bennett depo. (Exhibit E to Plaintiffs' Motion), p 6, l 19-23; he completed the written surveying examination in 1977, Bennett depo., p 9, l 6-10; he has taken a number of seminars through the Arkansas Association of Registered Land Surveyors, Bennett depo., p 5, l 18 – p 6, l 16.  Plaintiffs do not argue that Mr. Bennett's experience, training and education are insufficient to qualify him as an expert in the area of surveying.

The next consideration is whether his testimony is based upon sufficient facts or data, his testimony is the product of reliable principles and methods, and whether he has applied the principles and methods reliably to the facts of the case.  Factors to be considered in assessing reliability include whether the expert's theory may be tested or refuted, the degree of acceptance of the theory or technique within the relevant community, and whether the theory has been a subject of peer review or publication. *Id*. at 593-94.   The test of reliability, however, is a flexible one. *In re Scrap Metal Antirtrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008). "A court must be sure not 'to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.' " *Id*. Reliability instead means "an expert's testimony ... must be 'supported by appropriate validation-i.e., 'good grounds,' based on what is known ." *Id*. (citing *Daubert*, 509 U.S. at 590).   "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id*. at 529-30.

The last survey to describe the disputed boundary line was prepared in 1941 by J. L. Sloan

(Hearing Exhibit 3).   Plaintiffs argue that because Mr. Bennett did not rely on the Sloan survey to establish the boundary he did not apply reliable principles and methods.   The metes and bounds description of the Rorie Tract in the Sloan survey begins "at the point where the Hatchie River intersects the east bank of the chute of the Mississippi River at low water mark…"  and later references "a marked box elder tree on the point of the bank."   In a survey report dated December 13, 2007 and attached as Exhibit 2 to Defendant's Response and in his deposition testimony, Mr. Bennett explained that he attempted to use the Sloan survey as a reference however the beginning point has been washed away by the Hatchie River and he did not find a marked box elder tree. Bennett depo., p 19, l 3-14; Bennett report, p 5.   The lack of definitive monuments would appear to make it difficult to plot the boundaries of the Rorie tract using only the Sloan survey.

Plaintiffs cite Mr. Bennett's consideration of the tree line in preparing his survey as another indication that his methodology is flawed.   Mr. Bennett was contacted by Defendant to survey the south boundary line of the Rice Tract.   Bennett report, p 3.   Prior to surveying the boundary line, Mr. Bennett was taken to the area by U.S. Fish and Wildlife Service personnel who told him that a line of trees was the south boundary line.  *Id.*    Mr. Bennett explained in his report that he used the tree line in conjunction with other information obtained from deeds to adjoining tracts, boundaries resolved in a 1979 lawsuit involving adjoining tracts and aerial photographs of the area to plot the south boundary line.

Plaintiffs also assert that Mr. Bennett failed to adhere to the professional standard of care for surveyors and that said failure is justification for excluding his testimony and report. Plaintiffs argue that Mr. Bennett was required to

> "examine the records available, plot those deeds up in the survey, go out in the field, locate any field evidence, such as property corners, angles, fences, monuments and the like and make necessary computations in order to match them

4

> with the deeds.  Once the actual boundary corners are determined, a prudent surveyor would go back to the site and check the information and then write a description of the property."
> Plaintiffs' Memorandum, p 17.

Mr. Bennett's methodology is contrasted with that of Plaintiffs' expert, Don Cole as evidence of Mr. Bennett's failure to adhere to the standard of care.  Plaintiffs' Memorandum, p 20.  However, Mr. Bennett met the standard offered by Plaintiffs.   His report details the steps that he took and includes substantially all of the steps listed by Plaintiffs.  Undoubtedly he reaches a different conclusion than Plaintiffs' expert but resolution and reconciliation of competing expert reports and testimony is a credibility issue reserved for the trier of fact[3].

The recommendation to deny the motion is also based on the fact that this matter will be tried before an experienced trial judge as a bench trial and not before a jury.  The "gatekeeper" doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial.  *Deal v. Hamilton County Bd. of Educ.*  392 F.3d 840, 852 (6th Cir. 2004).  Absent a jury, courts "have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence meets the requirements of *Kumho Tire* and *Daubert* and deserves to be credited." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 636 (6th Cir. 2000).    In this case, there appear to be knowledgeable, qualified experts on each side that have sound yet competing means of determining what they believe to be the correct boundary line.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *U.S. v. Martinez*, 588 F.3d 301, 323 (6th Cir. 2009) citing

---

[3] "[C]omparing two pieces of evidence and determining which is more credible should be left for the finder of fact and should not be considered when ruling on Rule 702 admissibility." *Jahn v. Equine Services, PSC*, 233 F.3d 382, 391 (6th  Cir.2000).

*Daubert*, 509 U.S. at 596.

Based on the foregoing, it is recommended that Plaintiffs' Motion to Exclude Evidence and Testimony of Defendant's Expert Surveyor should be DENIED.

**IT IS SO ORDERED** this 21st day of January, 2010.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**